UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SARAH ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| A. DUIE PYLE, INC. | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

Plaintiff complains against Defendant as follows:

### PARTIES

1. Plaintiff Sarah Adams is a resident of South Portland, Maine.

2. Defendant A. Duie Pyle, Inc. ("ADP") is a business corporation organized under the laws of the State of Pennsylvania, and registered to do business in the State of Maine.

### JURISDICTION AND VENUE

3. Jurisdiction is based upon diversity of citizenship per 28 U.S.C. § 1332.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as most acts complained of occurred within the District. Under L.R. 3(b), this action is properly filed in Portland because events occurred in Cumberland County.

5. By filing a complaint with the Maine Human Rights Commission ("MHRC") and obtaining a Notice of Right to Sue, Plaintiff exhausted all requisite administrative remedies prior to bringing this action.

## FACTUAL ALLEGATIONS

6. Plaintiff began working for ADP on March 27, 2017. She was hired as the Integrated Solutions Operations Manager, with the responsibility of managing the Nestle (Poland Spring) Tanker division out of South Portland, Maine. At the time of her hire, she was told that she would be cross-trained to manage the linehaul and pickup/delivery ("P&D") drivers at the South Portland terminal.

7. Plaintiff was employed full time and compensated at a rate of $58,000 per year with full benefits.

8. At all times Plaintiff met or exceeded performance expectations.

9. In April of 2017, ADP hired a new driver, Steven Jones.

10. Shortly after his hire, Plaintiff developed serious concern for Jones's attention to safety.

11. In May of 2017, Jones improperly set the brakes in his truck, resulting in the un-attended truck rolling away. Fortunately, no one was injured.

12. Plaintiff immediately reported Jones's conduct to the South Portland terminal manager, Kelly Cimino, and the Manager in Northborough, Massachusetts, Mike Curran. Plaintiff told Cimino and Curran that she believed Jones's driving was extremely unsafe and that he should be dismissed.

13. On May 8, 2017, Plaintiff's request for Jones's termination was denied and she was not authorized to issue formal discipline on Jones.

14. Over the summer of 2017, Plaintiff received several reports from drivers and customers about Jones's negligent driving.

15. Plaintiff elevated each report or complaint that she received to Cimino, Curran, and/or ADP Director of Operations Joe Finn.

16. Cimino and Curran responded by telling Plaintiff that Jones was "[her] problem." However, she was not authorized to issue formal discipline on him.

17. In mid-August, after Plaintiff complained about Jones several times, Finn instructed Plaintiff to ride along with Jones on his route.

18. Plaintiff strongly objected to riding with Jones, telling Finn that Jones was a dangerous driver, and that she feared for her own safety.

19. Finn became upset with Plaintiff for refusing to ride with Jones. However, he allowed Plaintiff to take a separate car and observe Jones on his route.

20. During her observation, Plaintiff witnessed Jones cut-off other vehicles, run over curbs, and demonstrate an inability to safely drive his truck.

21. Plaintiff reported her observations to her supervisors and stated her concern that Jones was likely to cause a serious accident. She reported that she did not believe that his driving could be improved through additional training.

22. Plaintiff's supervisors continued to defend Jones, and refused to take any disciplinary action against him.

23. On multiple occasions during the summer and fall of 2017, Plaintiff asked Cimino when she could start training for P&D responsibilities. Each time she asked, Cimino claimed that they were too busy to train her. Even after things had slowed down, Cimino refused to schedule Plaintiff for training.

24. At the end of September of 2017, Nestle banned Jones from driving their routes due to an accident he caused with a water lines at one of their sources.

25. After being banned by Nestle, ADP terminated Jones's employment.

26. Two weeks later, on October 13, 2017, Curran presented Plaintiff with an impromptu performance evaluation. Although evaluations were to be given at 30-day, 60-day, and 90-day increments, this was the first performance evaluation Plaintiff had received in her nearly 200 days at ADP.

27. The evaluation was very critical of Plaintiff's performance and provided little explanation for the low marks. Plaintiff was forced to sign the evaluation.

28. On October 21, 2017, Plaintiff submitted, to ADP human resources ("HR"), a response to her negative performance evaluation, in which she asked for clarification about the negative review. Further, she explained that she thought ADP retaliated against for her reports about Jones and was in fear of losing her job.

29. Plaintiff received a reply from an HR representative saying she would be contacted later in the week. No one from HR contacted Plaintiff.

30. Plaintiff tried multiple times during that week to speak to someone in HR, but she was unable to get anyone on the phone with her.

31. On October 30, 2017, Curran and Cimino called Plaintiff into a meeting. Curran gave her a written rebuttal to her response to the performance evaluation, in which he criticized Plaintiff for asking for help, for not asking for help, for texting with personnel when she was not at work, and for not texting when

she was not at work. He also criticized her for voicing concern about the unclear chain of command to whom she was expected to report.

32. By the end of November 2017, Finn told Plaintiff she had "two choices: either go to the unemployment line, or take a part-time position as a dispatcher."

33. Plaintiff's schedule was cut to two days per week.

34. Plaintiff's salary was reduced from $58,000/year with full benefits, to $24,000 with no benefits.

35. Finn told Plaintiff the demotion was due to a "reduction in business."

36. Around the same time, ADP hired a friend of Cimino's, Nicole Menke, to take over the linehaul/P&D management position that Plaintiff was hired to perform. She was given full-time status, and was given Plaintiff's previous job title.

37. Plaintiff continued working in her drastically reduced capacity.

38. On March 23, 2018, Plaintiff filed a Complaint of Discrimination with the MHRC alleging whistleblower retaliation.

39. Defendant responded to the Complaint on May 22, 2018.

40. Plaintiff replied to Defendant's response on August 2, 2018.

41. On August 9, 2018, Defendant terminated Plaintiff's employment.

### COUNT I
### Whistleblower Retaliation
### (26 M.R.S. § 833)

42. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 41.

43. Section 833 of the Maine Whistleblower Protection Act ("MWPA")

prohibits an employer from retaliating against an employee for reporting in good faith what she reasonably believes to be a condition or practice that would put at risk the health or safety of that employee or any other individual.

44. Plaintiff, acting in good faith, made several complaints to Defendant about Jones's unsafe driving and the safety risks he posed to the public.

45. Defendant took adverse employment action against Plaintiff for making the reports about Jones, including subjecting Plaintiff to unwarranted hostility; cutting her hours by nearly 50 percent; reducing her pay by $34,000 per year; revoking her employee benefits; and ultimately terminating her employment.

46. Plaintiff, acting in good faith and within her legal rights, opposed her employer by filing a Complaint with MHRC, alleging that Defendant retaliated against her for reporting what she believed to be safety risks.

47. By terminating Plaintiff's employment, Defendant took adverse employment action against Plaintiff for filing her Complaint with MHRC.

48. There exists a causal connection between Plaintiff's protected activity and the adverse employment action to which she was subjected.

49. As a direct and proximate result of Defendant's acts, Plaintiff suffered damages in an amount to be proven at trial.

## COUNT II
**Retaliation**
**(5 M.R.S. § 4633)**

50. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 49.

51. Section 4633 of the MHRA prohibits any person from discriminating against an individual because that individual has opposed any act or practice that is unlawful under the MHRA or because that person has filed a charge and participated in the investigation of that charge under the MHRA.

52. Plaintiff, acting in good faith and within her legal rights, opposed her employer by filing a Complaint with MHRC, alleging that Defendant retaliated against her for reporting what she believed to be safety risks.

53. By terminating Plaintiff's employment, Defendant took adverse employment action against Plaintiff for filing her Complaint with MHRC.

54. There exists a causal connection between Plaintiff's protected activity and the adverse employment action to which she was subjected.

55. As a direct and proximate result of Defendant's acts, Plaintiff suffered damages in an amount to be proven at trial.

**PURSUANT TO FED. R. CIV. P. 38(b), PLAINTIFF REQUESTS TRIAL BY JURY OF ALL CLAIMS SO TRIABLE BY RIGHT.**

<u>Dated:</u> April 10, 2019            Respectfully Submitted,

                                                            */s/ James A. Clifford*
                                                            James A. Clifford
                                                            james@cliffordclifford.com

                                                            */s/ Andrew P. Cotter*
                                                            Andrew P. Cotter
                                                            andrew@cliffordclifford.com

                                                            CLIFFORD & CLIFFORD, LLC
                                                            62 Portland Rd., Suite 37
                                                            Kennebunk, ME 04043
                                                            (207) 985-3200